UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CONNIE ELLEN HORNUNG,

Plaintiff,

v. Case No. 3:19-cv-166-MCR-HTC

ANDREW SAUL,
Commissioner of Social Security,

Defendant.

_______________________________/

REPORT AND RECOMMENDATION

This case is before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Connie Ellen Hornung's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34 and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83. The case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and N.D. Fla. Loc. R. 72.2(D). Upon review of the record before the Court, the undersigned recommends that the Administrative Law Judge's ("ALJ") decision be reversed, and this matter be remanded to the Commissioner.

## I. ISSUES ON REVIEW

1. Whether the ALJ erred in concluding that Plaintiff's prior work as a payroll clerk qualified as past relevant work ("PRW").

2. Whether the ALJ lacked proper authority to decide this case because he was not properly appointed under the Appointments Clause.

## II. PROCEDURAL HISTORY

On May 26, 2015, Plaintiff protectively filed an application for DIB and SSI, claiming disability beginning June 15, 2014, due to her disabling condition. T. 190.[1] The Commissioner denied the application initially and on reconsideration. T. 28. After a hearing on December 5, 2016, the ALJ found claimant not disabled under the Act. T. 28-39, 44-68. The Appeals Council initially denied the request for review as untimely, but subsequently denied a request for further review on the merits. T. 1-3, 9-10. As a result, the ALJ's decision became the final determination of the Commissioner. The Commissioner's determination is now before the Court for review.

## III. STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936

---

[1] References to the record will be by "T.," for transcript, followed by the page number.

F.2d 1215, 1218 (11th Cir. 1991) ("This Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the

reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015). To qualify as a disability, the physical or mental impairment must be so severe the Plaintiff is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A); *see also* 42 U.S.C. § 1382c(a)(3)(B); *Stone*, 596 F. App'x at 879.

Pursuant to 20 C.F.R. § 404.1520(a)(4), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[2]

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other jobs exist in significant numbers in the national economy that accommodate the claimant's residual functional capacity ("RFC") and vocational factors, she is not disabled.

## IV. FINDINGS OF THE ALJ

In the written decision, the ALJ made the following findings relevant to the issues raised in this appeal:

- The claimant engaged in substantial gainful activity during the following period: January 1, 2015 through April 23, 2015.

- The claimant has the following severe impairments: obesity, diabetes mellitus type II, peripheral neuropathy, lumbar spondylosis, and allergic rhinitis.

[2] "[T]he claimant bears the initial burden of establishing a severe impairment that keeps him from performing his past work." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Page 6 of 24

- The claimant is capable of performing past relevant work as a payroll clerk as the work does not require the performance of work-related activities precluded by the claimant's residual function capacity ("RFC").[3]

## V. FACTUAL HISTORY AND BACKGROUND

Plaintiff was 57 at the time of the hearing. T. 44, 190. She has a GED but was not working at the time of the hearing and had not worked since approximately January 2016, when her job as a payroll clerk for her sister was terminated. T. 49-50, 55.

Plaintiff previously worked as a bartender or bar manager from January 1995 to October 2013. T. 51-52, 275. While working as a bar manager at Phillip's Oil, Plaintiff suffered an injury to her back in July 2013, and was unable to return to that job after October. T. 51, 316. As a result of this injury, Plaintiff began seeing Dr. Chen, who diagnosed her with acute lumbar strain, lumbar degenerative joint disease ("DJD"), and acute low back pain. T. 353. Plaintiff was prescribed medication for the pain by Dr. Chen but continued to complain about her back pain during her final visit in April 2015. T. 325.

[3] The Plaintiff's RFC is not at issue in this case as Plaintiff does not dispute the ALJ's RFC determination, which included that Plaintiff can stand/walk 2 hours but no more than 20 minutes at a time and can sit 6 hours but not more than 30 minutes at a time. She can engage in occasional pushing, pulling, balancing, stooping, kneeling, crawling, and climbing of ramps and stairs. She cannot crouch or climb ladders, ropes, or scaffolds, and should avoid unprotected heights and machinery. She can sustain attention for two-hour periods with breaks. T. 34, 35.

Although Plaintiff was no longer able to work as a bar manager after injuring her back, Plaintiff was able to start working for her sister, Anita Hill, as a payroll clerk.[4] T. 222-23, 239. Plaintiff was initially limited in that job and earned only $410 during the first six (6) months of work in 2014. T. 223. At the beginning of 2015, she worked three to four days a week, for three to four hours a day. T. 51. She worked more during the first quarter of 2015 than the remainder of that year. T. 51. In the first quarter of 2015 she was paid $4,310. T. 222-23. Plaintiff, however, made less than $3,000 in the second, third, and fourth quarters of 2015. T. 225. Plaintiff made $11,000 for the 2015 year. T. 48.

Plaintiff claims that income was not reflective of the hours she actually worked. T. 51. Rather, Plaintiff claims that she was paid by her sister for more work than she did. T. 51. Plaintiff's sister submitted a letter to the ALJ stating that, despite the fact that Plaintiff was moved from full-time work to part-time work and had numerous interruptions to her work because of pain, she continued to pay Plaintiff because they were family. T. 230. Plaintiff's sister fired Plaintiff in the first quarter of 2016 after the Plaintiff made a mistake that cost her sister multiple clients. T. 55, 225, 230.

[4] Plaintiff testified during the hearing that she started with her sister in 2013, but that appears to be incorrect based on the records presented. T. 50.

Plaintiff suffers from "severe hypertrophy in her back" and "neuropathy in the feet and her hands" from her type 2 diabetes. T. 47, 364. Plaintiff claims that her feet pain limits "her ability to . . . stand and to walk, and the pain in her back limits her ability to sit for long periods of time." T. 47. Plaintiff described her feet pain as a ten on a scale from one to ten, even with the high dose of pain medication she receives. T. 54. Plaintiff's sister also completed a third-party function report corroborating Plaintiff's level of pain. T. 253, 254.

Plaintiff lives with her 82-year-old mother. T. 52. They have a person who cleans the house for them. T. 52. Plaintiff does the grocery shopping and relies primarily on microwaveable meals. T. 53. On an ordinary morning, Plaintiff wakes up, drinks two cups of coffee, sits down until her back hurts, then she stands up until her back stops hurting, and repeats the sit and standing routine throughout the day. She also lies down a couple of times a day. T. 53. Plaintiff states she cannot sit for more than fifteen (15) minutes. T. 53.

## VI. ANALYSIS

### A. Whether The ALJ Erred In Finding That Plaintiff's Prior Work As A Payroll Clerk Constituted PRW.

As stated above, at the fourth step of the ALJ's analysis, the ALJ must determine if the claimant can perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform PRW, then the claimant is not disabled. If, however, the claimant cannot perform PRW, then the ALJ moves to the fifth step to determine the

claimant's ability to perform other work. 20 C.F.R. § 404.1560(c). Here, because the ALJ determined that Plaintiff's past work as a payroll clerk from January 1, 2015 to April 23, 2015 constituted PRW, the ALJ did not proceed to the fifth step.[5]

The SSA defines prior work as PRW when it meets three criteria: (1) the work was "done within the past 15 years"; (2) the work "lasted long enough for you to learn to do it," and (3) the work constitutes "substantial gainful activity" ("SGA"). 20 C.F.R. § 404.1565(a). The Plaintiff does not dispute that her work as a payroll clerk occurred within the past fifteen (15) years. Plaintiff makes a cursory argument that her work as a payroll clerk was not long enough for her to learn to do it. The undersigned, however, finds little merit in that argument given that the ALJ determined Plaintiff worked as a payroll clerk for more than 3 months at SGA levels, and she also worked as a payroll clerk at below SGA levels at other times.

Instead, the crux of Plaintiff's argument deals with element three, whether the work constitutes SGA. On that issue, Plaintiff raises two (2) arguments as to why the ALJ erred in determining her work as payroll clerk was PRW. First, she argues her income from January to April 2015, was subsidized by her sister and, without

---

[5] Although Plaintiff worked as a payroll clerk for her sister from 2014 to 2016, the ALJ determined that only her work from January 1, 2015 to April 23, 2015, was at substantial gainful activity levels. Thus, it is only that portion of time that is relevant for purposes of determining whether this work constituted past relevant work.

such subsidy, Plaintiff's income would not be at SGA levels.[6] Second, Plaintiff argues that even if her work was at SGA levels, it was an unsuccessful work attempt ("UWA").

For the reasons set forth below, the undersigned recommends the Commissioner's decision be remanded for further proceedings because the ALJ did not consider whether Plaintiff's income was subsidized by her sister and did not provide an adequate basis for his determination that Plaintiff's prior work was disqualified from being UWA.

1. The ALJ erred by failing to consider whether Plaintiff's income as a payroll clerk was subsidized by her sister.

SGA is a measurement by the SSA to evaluate work activity based on an individual's earnings and excludes income "not directly related to [the claimant's] productivity." 20 C.F.R. § 404.1574(a)(2). The SSA regulations provide that earnings from work activity will be considered substantial gainful activity if the monthly average of the earnings exceeds a certain amount. *See* 20 C.F.R. 404.1574(b). Based on the SSA guidelines, the threshold for monthly SGA level

[6] All of Plaintiff's work from January to April 2015 was as a payroll clerk for her sister, Anita Hill, despite references in the record to three different employers. *See* Plaintiff's income records from H & H Firearms and Little Low Carb Pantry, T.225-28, and the letter from Anita Hill on Payroll Servicing, Inc., letterhead, T.230. Anita Hill, Plaintiff's sister, owned all three companies, T.50, and the "jobs were really the same job" in which Plaintiff "did the payrolls." *Id.* Plaintiff was "[j]ust being paid by different accounts." *Id.* The ALJ, in discussing substantial gainful activity and past relevant work, cited Plaintiff's earnings with Little Low Carb Pantry and H & H Firearms without explicitly stating that such employment was for Plaintiff's sister and possibly subsidized by her. T. 30-31 and 38-39.

Page 11 of 24

pay in 2015 was $1,090. T. 30. It is undisputed that Plaintiff's monthly pay for the first quarter of 2015 was $1,436, thus, appearing to be above SGA levels. T. 227-28.

However, the monthly pay considered for SGA is only the "countable earnings," and excludes any subsidized earnings the claimant received. SSR 83-33 at 2. In other words, subsidized earnings must be removed from the calculation of monthly pay level when determining SGA. Earnings may be considered subsidized when an employee is paid more than the actual value of his or her work by the benevolence of an employer. *See* SSR 83-33(A)(1).

As stated above, Plaintiff argues the ALJ erred by failing to consider whether Plaintiff's income included amounts subsidized by her sister and further that this error was not harmless because if a mere $346.01 of her income was a subsidy, her work between January and April 2015 would fall below SGA levels.

There is no dispute that Plaintiff alerted the ALJ to a potential subsidy. She testified at the hearing that her sister paid her for work she did not do and that her sister compensated her "where she really shouldn't have." T. 51. Additionally, Plaintiff's sister submitted a letter stating that she continued to employ Plaintiff part-time and pay her even though "she missed a lot of work and often left early or arrived late" and "had to take numerous breaks." T. 230.

The regulations state that when an "employer, employee, or other interested party alleges that the employee does not fully earn his or her pay," such as Plaintiff's sister did in this case, that should be considered as a strong possibility of subsidy and should be further investigated by the ALJ. *See* SSR 83-33(A)(1)(a)(5). Moreover, although Plaintiff told the ALJ she did not have a record of the hours she worked, and the sister's letter did not state how much she paid Plaintiff for work she did not do, the ALJ had an obligation to consider the potential of a subsidy, nonetheless. T. 51, 230. Pursuant to the SSA regulations, when "precise monetary evaluation is not feasible," the ALJ should engage the employer in a series of questions to determine if there is a subsidy and how much. *See* SSR 83-33(A)(1)(c).

The ALJ, however, did not ask Plaintiff or her sister any of the regulation's suggested questions. There is absolutely no discussion by the ALJ in his opinion as to whether any of the amounts paid to Plaintiff by her sister from January 1, 2015 to April 23, 2015, constituted a subsidy. Instead, the ALJ completely ignored the possibility that a subsidy would have reduced Plaintiff's SGA level pay. *See* T. 28-39. An ALJ's failure to consider the impact of a subsidy requires a remand of the decision, as without such consideration, a reviewing court cannot find that the ALJ's conclusion is supported by substantial evidence. *See Henn v. Commissioner of Social Sec.*, 2012 WL 2814011 at *13 (M.D. Fla. 2012) (remanding the ALJ's decision for failure to consider subsidies).

The Commissioner argues, however, that the ALJ's decision should be affirmed because the ALJ implicitly rejected the sister's letter. ECF Doc. 11 at 8. Specifically, the Commissioner argues that by assigning little weight to the sister's third-party function questionnaire, the ALJ necessarily, or by implication, also assigned little weight to the sister's letter. *Id* at 8 n.3. The undersigned disagrees.

First, when subjective evidence is submitted, as it is here, it is the job of the ALJ to "explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). Because the ALJ did not address the subsidy at all, the ALJ did not explicitly discredit either pieces of information. *See Hall v. Colvin*, 2016 WL 158770 at *4 (M.D. Fla. 2016) (finding the ALJ's lack of credibility findings on testimony regarding a subsidy was harmful to plaintiff's claim).

Second, ALJ assignment of little weight to the sister's third-party function was not an implicit rejection of the sister's letter regarding a subsidy. The third-party questionnaire completed by the sister identified what the sister thought Plaintiff could and could not do and why. For example, in the third-party questionnaire, the sister explained how long Plaintiff could sit or stand at a time, what Plaintiff did to manage her pain, and Plaintiff's up and down emotional state. T. 253, 254. The ALJ assigned little weight to the third-party function report because it was "based on the claimant's subjective complaints as opposed to objective

findings." T. 38. Additionally, the ALJ found both the questionnaire and the Plaintiff's subjective complaints of pain to be at odds with what the Plaintiff could do as well the medical evidence. T. 35, 38.

The crux of the subsidy letter, however, is not about whether Plaintiff's impairment caused her pain. Instead, the letter is about whether Plaintiff's sister paid Plaintiff for work she did not do (regardless of the reason she may not have been able to do it). T. 230. Because the third-party questionnaire and the letter address two completely different matters, the ALJ's assignment of little weight to one does not necessarily mean that the ALJ also assigned little weight to the other.

The facts of this case are different from the cases relied upon by the Commissioner. In *Clyburn v. Comm'r Soc. Sec. Admin.*, 555 Fed. App'x. 892, 894-895 (11th Cir. 2014), for example, the Eleventh Circuit held that the ALJ did not err "by not explicitly discussing statements contained in an affidavit by [the plaintiff's] sister. Because the ALJ expressly rejected as not credible [the plaintiff's] testimony about the severity of her pain and the extent of her limitations, he impliedly rejected the statements in the affidavit as well." Similarly, in *De Olazabal v. Soc. Sec. Admin., Comm'r*, 579 Fed.App'x 827, 832 (11th Cir. 2014), the court held that a third-party function report was cumulative of other testimony, which had been considered by the ALJ, and thus, the ALJ's failure to specifically address the report

was harmless. Here, however, the subsidy letter is not cumulative of the third-party report.

Accordingly, the undersigned recommends this case be remanded under 42 U.S.C. § 405(g) for the ALJ's consideration of whether any portion of the income Plaintiff received as a payroll clerk was subsidized by her sister and if so if the amount of the subsidy was sufficient to reduce Plaintiff's work to below SGA levels.

2. Remand is required on ALJ's determination that Plaintiff's work as a payroll clerk was not an unsuccessful work attempt ("UWA").

As stated above, Plaintiff argues that even if her income was at SGA levels, her work as a payroll clerk was not SGA, but instead was an unsuccessful work attempt. Work constitutes an UWA if the following three elements are met: (1) the work was performed for six months or less; (2) the work comes after a significant break in work; and (3) the individual either stopped working or their income fell under the SGA level as a result of the individual's disability. 20 C.F.R. § 404.1574(c). In the ALJ's decision, he states that "[g]iven the totality of the circumstances, including the continued employment, the period of substantial activity in 2015 does not qualify as unsuccessful work attempt." T. 31. This statement is the ALJ's sole explanation for his rejection of Plaintiff's UWA argument.

The ALJ did not go through the elements of UWA in his decision. Although the ALJ gave some factual information regarding Plaintiff's work history, he did not

identify what circumstances he considered to be pertinent in his reference to the "totality of the circumstances." *Id.* The ALJ further did not explain what he meant by Plaintiff's continued employment or why her continued employment weighed into his determination that her work as a payroll clerk was not UWA.

As Plaintiff points out, if the ALJ's reference to her continued work was her continued employment after April 2015, that employment was at below SGA levels, and, thus, should not have disqualified Plaintiff's time as a payroll clerk from being an UWA. ECF Doc. 10 at 4. However, because the ALJ does not adequately explain his decision, that reference could also be to Plaintiff's continued employment after her onset date, which could mean that the ALJ determined Plaintiff failed to show that her work as a payroll clerk came after a "significant break,"[7] as argued by the Commissioner. ECF Doc. 11 at 7. It is simply unclear from the ALJ's decision what factors he considered in concluding that Plaintiff's prior work as a payroll clerk was not an UWA.

Nonetheless, the Commissioner asks the Court to affirm the ALJ's findings because Plaintiff "did not prove her subsequent reduction to below SGA-level was due to her impairment." *Id.* Specifically, the Commissioner argues that regardless

[7] A significant break in work occurs when a claimant "stopped working or reduced [her] work and earnings below the substantial gainful activity earnings level because of [her] impairment," or when the claimant is out of work for thirty (30) days or was forced to change work as a result of the impairment. 20 C.F.R. § 404.1574(c)(2). The Commissioner argues that because Plaintiff began working for her sister in June 2014, at the time of the onset of her disability, there was no significant break in her work prior to January 1, 2015. ECF Doc. 11 at 7.

of what was stated by the ALJ in his opinion, the Plaintiff does not dispute the ALJ's RFC determination and also does not dispute that she has the RFC to return to her work as a payroll clerk. *Id.* Thus, Plaintiff clearly could not have reduced her work to below SGA levels after April 2015 because of her impairment.

Generally, when a claimant's income was above the SGA monthly earning threshold, a presumption arises that the claimant engaged in SGA. *See Boone v. Berryhill*, 2019 WL 1983813, *4 (S.D. Ala. 2019). A claimant, however, can rebut this presumption, by arguing that her prior work was UWA. *Id.*; *see also, Little v. Astrue,* 2012 WL 1745521, *5-6 (N.D. Ala. May 11, 2012) (recognizing that the presumption may be rebutted by establishing that the employment constitutes UWA). The claimant generally "has the burden of showing that certain work experience is not past relevant work." *Eyre v. Commissioner, Social Sec. Admin.*, 586 F. App'x 521, 524 (11th Cir. 2014), quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991).

While the Commissioner may ultimately be correct that Plaintiff has failed to meet that burden, the Court cannot rely on the Commissioner's *post hoc* rationalizations to explain the ALJ's finding at step four.[8] *See Russell v. Colvin*,

[8] Plaintiff argues that based on her testimony and the third-party function completed by her sister, she has presented sufficient evidence to show that she reduced her work levels because of her impairments. ECF Doc. 10 at 4, 5. The undersigned notes, however, that in the ALJ's analysis regarding Plaintiff's RFC, the ALJ assigned little weight to the third-party questionnaire and to the Plaintiff's subjective complaints of pain because they were not consistent with the medical evidence or Plaintiff's capabilities. T. 35, 38.

2013 WL 6768331 at *8, 8 n.10, 9 (N.D. Fla. Dec. 20, 2013) (remanding case for ALJ's failure to consider or even mention other evidence relevant to the evaluation of Plaintiff's mental conditions) (citing *Baker v. Comm'r of Soc. Sec.,* 384 F. App'x 893, 896 (11th Cir. 2010) ("[A] court may not accept appellate counsel's *post hoc* rationalizations for agency actions. . . . If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order.")). Instead, this Court must review the ALJ's findings, not "the Commissioner's after-the-fact rationalizations offered to support the ALJ's findings." *See Larry v. Berryhill,* 2017 WL 4401482, at *9 (N.D. Fla. Aug. 30, 2017). In other words, even if the Commissioner's argument is a fair comment based on the record, "it is the ALJ's opinion that this court must review." *See id.*; *see also Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984) (holding that, while strong grounds may have existed for rejecting claimant's testimony, ALJ's failure to articulate reasons for doing so precludes meaningful appellate review).

Nowhere in the ALJ's opinion does the ALJ find that Plaintiff did not show she reduced her work levels after April 23, 2015, because of her impairment. Although the ALJ found that Plaintiff has an RFC to perform her prior work as a payroll clerk, the ALJ's RFC determination applies to what Plaintiff can or cannot do as of June 1, 2017 and is not necessarily determinative of what Plaintiff could or could not do on April 24, 2015. And, nowhere in the ALJ's opinion does he tie his

RFC determination to Plaintiff's reduction in hours in 2015. Thus, "[t]he problem confronting the court . . . is that the ALJ does not [*himself*] explain how [he] reached [his] conclusion . . . and the court cannot read the ALJ's written decision to include—even implicitly—the rationale now advanced by the Commissioner." *Trammell v. Colvin*, 2013 WL 4028489, at *3 (M.D. Ala. Aug. 7, 2013).

Without a reasoned analysis, the undersigned finds no basis to affirm the ALJ's determination that Plaintiff's work as a payroll clerk was not UWA. *See Williams v. Astrue,* 2010 WL 2342426, at *3-4 (M.D. Fla. June 8, 2010) (finding that work could not be considered SGA due to inadequate analysis). Indeed, it is not the district court's job to supply a basis to support the ALJ's determination, on appeal, where such basis cannot be ascertained from the decision. *See id.* Regardless, even if Plaintiff's RFC may have been the same in April 2015, this Court, on appeal, should not supply a basis to support the ALJ's findings. *See Dixon v. Astrue*, 312 F. App'x 226, 229 (11th Cir. 2009) (per curiam) (holding that the court cannot "supply a reasoned basis for [the ALJ's decision] that the [ALJ himself] has not given"); *Smith v. Colvin,* 2015 WL 5725808 at *12 n.11 (N.D. Fla. Sept. 29, 2015) (noting that, even though Plaintiff's testimony could support the ALJ's determination, the ALJ did not identify the Plaintiff's testimony as a basis for finding his mental impairment and "it is not the role of the court to supply any such basis to

support the ALJ's findings") (citing *Allen v. Barnhart*, 357 F. 3d 1140, 1145 (10th Cir. 2004) (district courts should not draw factual conclusions on behalf of an ALJ)).

Indeed, in *Williams*, *supra*, the Middle District considered a similar argument, also in the SGA context, and rejected the Commissioner's argument that the evidence showed claimant's absences from work were not caused by her impairments and thus did not constitute an unsuccessful work attempt because "these arguments cannot substitute for a properly explained decision by the law judge dealing with the plaintiff's ability to work in 2006." *Williams*, 2010 WL 2342426, at *3.[9] Accordingly, the undersigned finds that a remand for further administrative proceedings on the issue of whether the work was an UWA, pursuant 42 U.S.C. § 405(g), is warranted.

**B. Whether The ALJ Lacked Authority To Enter A Decision On Plaintiff's Case.**

Relying on the United States Supreme Court's decision *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), Plaintiff contends that the ALJ's decision is not valid because he was not properly appointed by the SSA under the Appointments Clause. ECF Doc. 10 at 9. In *Lucia*, the Court determined that administrative law judges in the Securities and Exchange Commission ("S.E.C.") were improperly appointed as

[9] The regulations in effect in *Williams* were different from those in place today, but the court's determination that "[i]t is a basic proposition of administrative law that *post hoc* rationalizations of litigating counsel do not provide the basis for judicial review of an administrative decision" holds true. *See Williams*, 2010 WL 2342426, at *3.

"Officers of the United States," because they were not appointed by the President, a court, or by the head of the relevant department. *Lucia*, 138 S.Ct. at 2051, citing Art. II § 2, cl. 2. The Supreme Court ruled that the proper remedy in *Lucia* was for the plaintiff to have a "hearing before a properly appointed official" which Plaintiff argues should be the same remedy here. ECF Doc. 10 at 14 (quoting *Lucia*, 138 S.Ct. at 2055)

Regardless of whether the ALJ was properly appointed, the undersigned finds that remand is not warranted on this ground because Plaintiff failed to raise this argument before the SSA. Plaintiff argues that there is no issue-exhaustion requirement applicable here and relies on *Lucia*, *Sims v. Apfel*, 530 U.S. 103, 108 (2000), and SSR19-1p. Those Supreme Court cases and the SSA ruling, however, do not support such a conclusion.

First, Plaintiff's interpretation of SSR19-1p is overly broad. In SSR19-1p, the SSA ruled that the Appeals Council could grant a review based on the Appointments Clause even though it was not raised before the ALJ, if it was "timely raised" by Plaintiff. SSR19-1p at 3. Although SSR19-1p does not specify what it means to be "timely raised," the Court in *Lucia* defined timeliness as an Appointments Clause

challenge raised during the SEC's administrative process. *Lucia,* 138 S. Ct. at 2055.[10]

Also, in *United State v. LA Tucker Truck Lines, Inc.,* 344 U.S. 33, 38 (1952), the Supreme Court determined that objections to an Agency's officers cannot be made for the first time in the district court. Plaintiff's argument that there is no issue-exhaustion requirement is also belied by the SSA regulations on removing an ALJ, which require any objections to their appointment must be made "at your earliest opportunity." 20 C.F.R. § 404.940. Thus, the undersigned finds that Plaintiff's failure to raise an objection to the ALJ's authority during the SSA administrative process prevents consideration of the issue by this Court, as such an objection is untimely.

Second, Plaintiff's reliance on *Sims* is also misplaced. The Court in *Sims* held that there was no issue-exhaustion requirement at the appeals council level. *Sims*, 530 U.S. at 108. However, the Court explicitly stated it was not deciding whether a plaintiff needs to exhaust all issues before the ALJ. *Id.* at 107. Additionally, other circuits have followed this and have continually decided not to extend this to the ALJ level. *See Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (holding that it would

---

[10] Thus, SSR19-1p involves cases still under consideration within the SSA system, not cases where the SSA process was completed and the case brought to federal court. Here, Plaintiff's ALJ hearing decision was in June of 2017, *Lucia* was issued in June of 2018, and the AC decision was in December of 2018. Thus, Plaintiff could have raised *Lucia* to the AC but failed to.

not extend *Sims* to the ALJ level); *Rabon v. Astrue*, 464 F. App'x 732, 734 n.3 (10th Cir. 2012) (same); *Logan v. Barnhart*, 72 F. App'x 488, 491 (7th Cir. 2003) (same).

Moreover, although the Eleventh Circuit has not yet addressed this issue,[11] district courts in this Circuit have consistently found that an Appointments Clause defense is not a valid reason to receive a new hearing when it is not raised at the administrative level. *See Abbington v. Berryhill*, 2018 WL 6571208 at *9 (S.D. Ala. 2018); *Valle-Roman v. Commissioner of Social Security*, 2019 WL 1281171 at *2 (M.D. Fla. 2019); *Moye v. Saul*, 2020 WL 1433280 at *4-6 (S.D. Fla. 2020). The Commissioner cites dozens of cases from forty-four (44) districts that have held Appointments Clause claims must be made in the SSA appeals process. Those cases include a case from this District. In *Jones v. Berryhill*, 2019 WL 2583157 at *7 (N.D. Fla. 2019), the court held that *Lucia* required a timely claim and rejected an

[11] This issue is on appeal before the Eleventh Circuit. *See Perez v. Commissioner of Social Sec.*, No. 19-11660 (11th Cir. filed April 29, 2019); *Gagliardi v. Social Security Administration*, No. 20-10858 (11th Cir. filed March 2, 2020); *Cardoso v. Commissioner of Social Sec.*, No. 20-11705 (11th Cir. filed May 4, 2020).

Appointments Clause defense raised for the first time on appeal. Thus, the undersigned finds that remand is not warranted on this issue.

## VII. CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1. That the decision of the Commissioner be REVERSED and REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this recommendation.

2. That the clerk be directed to enter judgment in favor of the Plaintiff and close the file.

At Pensacola, Florida, this 6th day of August, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.